UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

ADAM HACKETT,                          :
                                       :
                Plaintiff,             :        C.A. No. 06-426 JJF
                                       :
v.                                     :
                                       :
CORRECTIONAL MEDICAL SERVICES, :
                                       :
                Defendant.             :

**DEFENDANT CORRECTIONAL MEDICAL SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Defendants Correctional Medical Services, Inc. ("CMS") by and through its undersigned counsel, hereby moves for entry of judgment in its favor as a matter of law. In support of this Motion, CMS states as follows:

*PROCEDURAL STATUS*

1.      On July 10, 2006, Plaintiff initiated the above-captioned action by filing his Complaint (D.I. 2) against several parties, including CMS. Claims against the other named defendants were dismissed as frivolous, leaving CMS as the only defendant. (D.I. 9) Specifically, Plaintiff alleged that he did not get "necessary medical attention for an unusual bump that appeared on plaintiff's head." (D.I. 2 at 3) Plaintiff's Complaint seeks "outside treatment of diagnosis by another doctor not affiliated with CMS" (*id.*), as well as monetary compensation for "lack of necessary medical attention and care, pain and suffering". (*Id.* at 4)

2.      CMS moved to dismiss any state law claims for medical negligence (D.I. 16) and filed a Motion for More Definite Statement. (D.I. 17) Plaintiff responded to the Motion for More Definite Statement with additional facts (D.I. 19), which the Court construed as an Amended Complaint. (D.I. 22) The Motion for More Definite Statement was withdrawn as moot. (*Id.*) On

May 17, 2007, CMS filed its Answer to the Amended Complaint.  (D.I. 24)  The Court has not yet ruled on CMS's Motion to Dismiss state law medical claims.

3.       On December 14, 2007, CMS filed its expert disclosures, including the expert report of John Conlon, M.D. (D.I. 39) The parties have conducted written discovery, and the discovery period is now closed. (D.I. 28, 32, 46)   This is CMS's Motion for Summary Judgment.

*FACTS*

4.       Plaintiff alleges that he did not receive appropriate or timely treatment for a small cyst located on the right side of his head. (D.I. 2) On November 2, 2005, Plaintiff submitted a Sick Call Request form which stated, in part:  "My head has been hurting".   (Exhibit "A", Medical Records, at 1)  Plaintiff was seen and examined by a registered nurse, who noted a "lump on the (right) side of (his) head that comes (and) goes.  Area painful. (Complains of shortness of breath) daily. . . ." (*Id.*)  As a result of the exam, Plaintiff was referred to a nurse practitioner, who wrote a consultation request seeking to refer the Plaintiff to a general surgeon to examine the 1 cm x 1.5 cm cyst. (*Id.* at 2)   The request was submitted to CMS administrators who reviewed and returned the form with some questions, specifically, whether there were any signs of inflammation or infection, such as redness or foul-smelling drainage.  (*Id.* at 3)  The medical provider indicated that there were no such indications.  (*Id.*)

5.       On January 1, 2007, Plaintiff submitted another Sick Call Request form, this time stating: "I am having chest pains again.  And the knot on my head is causing extreme headaches. . . ." (*Id.* at 4)  The medical provider who saw him that day noted that he had headaches when he lay down and sometimes pain around his left pectoral muscle.   She indicated that Plaintiff was using Motrin for pain, and that they were awaiting a general surgery consult. (*Id.* at 4) On January 4,

2007, given the lack of any signs of inflammation or infection, the referral was deferred as "non-urgent." (*Id.* at 5)

6.      Nothing further was heard from the Plaintiff until May 7, 2006, when he submitted a Sick Call Request indicating that the "knot on my head is causing headaches and tiredness. And I hurt my left arm. . . ." (*Id.* at 6) Plaintiff was seen by a nurse practitioner on June 5, 2006. She noted: (Plaintiff) here for (follow up with) mass to head states it is hurting, and (he is) sometimes getting headaches." (*Id.* at 7) Also of note is her observation that the cyst had increased to 2.5 x 1 cm. (from 1.5 x 1 cm in November) and that there was now a "black spot at center of cyst". (*Id.*) She ordered Motrin for pain and prepared another Consultation Referral form for a referral to a general surgeon. (*Id.* at 7, 8) The Consultation Form was approved by CMS on June 8, 2006. (*Id.* at 8) An appointment was scheduled and Plaintiff was taken out to see Dr. Barnett on June 29, 2006. Barnett examined the Plaintiff and recommended excision of the cyst. (*Id.* at 9-11) On July 26, 2006, Dr. Barnett excised the cyst under local anesthesia. (*Id.* at 12) Pathology showed the mass to be a BB pellet surrounded by fibrosis. (*Id.* at 13)

7.      Plaintiff was seen by CMS medical providers on the afternoon following the surgery (*id.* at 14), and again two days later for comprehensive examinations, during which the dressings and sutures were checked. (*Id.*) Plaintiff had no complaints of dizziness at either of these visits. (*Id.*) Plaintiff was seen on July 30 for complaints of dizziness while standing and in between changing positions. (*Id.* at 15) Plaintiff was examined and EKGs and blood pressure readings were taken with the Plaintiff in sitting, standing, and lying positions. (*Id.*) CMS medical providers followed up on July 31, and Plaintiff denied any further dizziness. (*Id.* at 16)

8.      Plaintiff was seen by Dr. Barnett for follow up on August 8, 2006. (*Id.* at 17) At that time the only complaint that Plaintiff had was pain in his right arm. (*Id.*) Plaintiff's sutures were

removed by Barnett "without difficulty".  (*Id.*)  Plaintiff was seen by CMS medical providers for

follow up on August 22, 2006.  Notes from that visit reflect the Plaintiff was seen to "(follow up)

on suture removal to forehead.  Denies any complaint.  Suture line to (right) proximal fore head

healed well.  (No) erythema, (no edema)."  (*Id.* at 18)  Since August 22, 2006, Plaintiff has

submitted only two Sick Call Requests, one for headache, dated June 16, 2007:  "I have a

headache.  I need aspirin for pain"; and one for headache and a swollen mouth on July 6, 2007.

(*Id.* at 19, 20)  There are no further records of any type in Plaintiff's chart that reflect any

complaints related to the cyst or the excision.

*ARGUMENT*

   *The Standard for Summary Judgment*

9.    A court shall grant summary judgment where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue at to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c).  As the moving party here, CMS bears the burden of proving that

no genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*

475 U.S. 574 586 n. 10 (1986).  Once CMS demonstrates an absence of material fact, the burden

shifts to Plaintiff to provide "specific facts showing that there is a genuine issue for trial."  Fed.

R. Civ. P. 56(e).  The Court here should view the underlying facts and all reasonable inferences

therefrom in the light most favorable to the Plaintiff.  *Pennsylvania Coal Ass'n v. Babbitt*, 63

F.3d 231, 236 (3d Cir. 1995).

10.    The mere existence of some evidence in support of the Plaintiff, however, will not be

sufficient for denial of a motion for summary judgment; there must be enough evidence to enable

a jury reasonably to find for Plaintiff on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).  Here, if Plaintiff fails to make a sufficient showing on an essential element of

his case with respect to which he has the burden of proof, then CMS is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

11.     Here, Plaintiff must show: (i) that he had a serious medical need; and (ii) a policy or

custom by CMS that indicates deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S.

97, 104 (1976).  Because Plaintiff cannot meet that burden under the facts of record, CMS is

entitled to judgment in its favor as a matter of law.

*CMS IS ENTITLED TO JUDGMENT IN ITS FAVOR AS A MATTER OF LAW*

        *State Law Negligence Claims*

12.     As a preliminary matter, Plaintiff may not maintain a claim against CMS based on

medical negligence pursuant to Delaware state law, as he has failed to comply with the

requirements of 18 *Del. C.* § 6853.  On March 26, 2007, CMS filed its Motion to Dismiss

Pursuant to 18 *Del. C* § 6853 based on the Plaintiff's failure timely to submit an affidavit of

merit with his Complaint[1]. (D.I. 19)  The Court has not yet ruled on that Motion.  In the event the

Court denies that Motion, it should still enter judgment in favor of CMS as a matter of law,

because Plaintiff has offered no expert medical testimony as to the applicable standard of care,

any breach thereof, or causation of injury arising therefrom.  *See* 18 *Del. C.* §§ 6853, 6854.

Without such testimony, Plaintiff cannot submit his case to the jury, and CMS is entitled to

judgment in its favor:

> Similarly, the moving party is entitled to summary judgment, as a
> matter of law, if the nonmoving party fails to make a sufficient
> showing on an essential element of his or her case with respect to
> which he or she has the burden of proof. Therefore, when the
> nonmoving party bears the ultimate burden of proof, summary
> judgment is proper if the moving party can show a failure of proof

---

[1] Plaintiff also failed to submit an affidavit of merit with his Amended Complaint.

> concerning an element that is essential to the nonmoving party's case. Consequently, we hold that, in the absence of an applicable statutory exception, when there has been an adequate time for discovery in a medical malpractice action and the record unambiguously reflects that the plaintiff's allegations are not and will not be supported by any expert medical testimony, a defense motion for summary judgment does not require the support of an expert's affidavit.

*Burkhart v. Davies*, 602 A.2d 56, 61 (Del. 1991) (internal citations omitted).

Because Plaintiff has failed to comply with the requirements of 18 *Del. C.* § 6853 and 6854, CMS is entitled to judgment in its favor as a matter of law on any claim for medical negligence pursuant to Delaware state law.

### *Plaintiff Fails to State a Claim for Deliberate Indifference*

13.    Not only is CMS entitled to judgment in its favor as a matter of law, but Plaintiff has failed even to state a proper Eighth Amendment claim against CMS.  In order to state a claim for a violation of civil rights based on medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  In order to show "deliberate indifference," a plaintiff must demonstrate an act or omission and a sufficiently culpable state of mind on the part of the defendant.  *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994).  The plaintiff must also show personal involvement by the defendant.  *Clyne v. Correctional Medical Services*, 2004 WL 502215, *2 (D.Del. 2004) (Exhibit "B") citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) *see also Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1979) (*respondeat superior* may not be used in a § 1983 claim).  In the case of a private corporation, such as CMS, Plaintiff must allege "a policy or custom that demonstrates deliberate indifference." (*Id.*) However, there is simply no allegation in any of the pleadings here that alleges CMS

promulgated any policy or custom that demonstrated deliberate indifference toward Plaintiff's medical needs.

14.    Taking the allegations in the light most favorable to Plaintiff, he has alleged that he was not timely seen by outside medical providers (D.I. 2 at 3), that following the surgery, his sutures were not timely or completely removed (D.I. 19 at ¶1), and that following his surgery he was not admitted to the infirmary (*Id.* at ¶3).   Even accepting all these as true[2], the Court must still rule in favor of CMS.  As stated, Plaintiff has not alleged and has not elicited a single fact to show that CMS established or affirmed any policy or custom demonstrating deliberate indifference.  At best, Plaintiff alleges medical negligence, which is not sufficient to state a claim for deliberate indifference. *See Estelle*, *supra*, 429 U.S. at 105-106 (stating mere allegations of negligence do not meet the pleading standards for deliberate indifference).  As shown above, Plaintiff cannot recover here for medical negligence under state law.

*CMS is Entitled to Judgment as a Matter of Law*

15.    Even if the Court excuses Plaintiff's failure to state a claim, there are no facts in the record from which one can even infer that CMS was "deliberately indifferent".  Plaintiff's first complaint to CMS was November 11, 2005.  (Exhibit A at 1)  A consultation referral was written, but approval was deferred because the cyst showed no signs of inflammation or infection and therefore did not require immediate attention. (*Id.* at 2-3, 5)  When the cyst showed some changes six months later, CMS medical providers re-examined it and wrote a second referral, which was approved and acted upon.  (*Id.* at 7-8)  An appointment was scheduled and Plaintiff was seen by a specialist within thirty days.  (*Id.* at 9-11)  Within two weeks of that appointment,

---

[2]  CMS does not concede any of these points.

the cyst was excised and Plaintiff was seen for follow up by both the specialist and CMS medical

providers.  (*Id.* at 12, 14-18)  Plaintiff received medical attention appropriate to his needs.

16.     Because Plaintiff has failed to comply with the requirements of 18 *Del. C.* §§ 6853, 6854,

CMS is entitled to judgment in its favor as a matter of law on any medical negligence claim

based on Delaware state law.  Because Plaintiff has failed to state a valid Eighth Amendment

claim against CMS, the Complaint should be dismissed.  Even if the Court looks past this

shortcoming, the undisputed material facts clearly fail to show any deliberate indifference by

CMS.

WHEREFORE, for the foregoing reasons, CMS respectfully requests entry of an order in

the form attached hereto dismissing with prejudice all claims against CMS in the above-

captioned action.

BALICK & BALICK, LLC


_____/s/ James E. Drnec_____
James E. Drnec, Esquire (#3789)
711 King Street
Wilmington, Delaware 19801
302.658.4265
Attorneys for Defendant
Correctional Medical Services, Inc.


Date:   April 1, 2008

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

ADAM HACKETT,                              :
                                           :
            Plaintiff,                     :      C.A. No. 06-426 JJF
                                           :
v.                                         :
                                           :
CORRECTIONAL MEDICAL SERVICES, :
                                           :
            Defendant.                     :

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2008, the Court having considered Defendant Correctional Medical Services, Inc. ("CMS")'s Motion for Summary Judgment (the "Motion"), and all opposition thereto, it is hereby ordered that the Motion is GRANTED.  All claims against CMS are dismissed with prejudice.

_____
                    J.

# Exhibit B

United States District Court,
D. Delaware.
John CLYNE, Plaintiff,
v.
CORRECTIONAL MEDICAL SERVICES, et al., Defendants.
No. Civ.A. 01-684-KAJ.
March 8, 2004.

John P. Clyne, Jr., SBI # 237099, Multi-Purpose Criminal Justice Facility, Wilmington, Delaware, plaintiff pro se.

Kevin J. Connors, Marshall, Dennehy, Warner, Coleman & Goggin, Wilmington, Delaware, for defendants Correctional Medical Services and Jeannie Long.

Richard W. Hubbard, Department of Justice, State of Delaware, Wilmington, Delaware, for defendants Bradley A. Lee, Raphael Williams, and Stanley Taylor.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 Presently before me is a Motion to Dismiss filed by defendants Bradley A. Lee, a facility investigator at the Multi-Purpose Criminal Justice Facility ("MPCJF") in Wilmington, Delaware, Raphael Williams, the MPCJF warden, and Stanley Taylor, the Commissioner of the Department of Corrections (collectively, the "State Defendants") (Docket Item ["D.I."] 13). Also before me is a Motion to Dismiss filed by defendant Correctional Medical Services ("CMS"), a corporation which provides medical services and treatment to inmates housed in correctional facilities in the State of Delaware.[FN1] (D.I.26.) Plaintiff John P. Clyne, Jr. ("Clyne"), an inmate at the MPCJF, brought this action under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and state law claims for negligence and medical malpractice. (D.I.2.) Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons that follow, both Motions to Dismiss will be granted.

FN1. Plaintiff also named Jeannie Long, a registered nurse employed by CMS at the MPCJF, as a defendant in this case. To date, Ms. Long has not filed any dispositive motions.

II. BACKGROUND

For the past ten years, Plaintiff has suffered from alcohol dependence and clinical depression. (D.I. 2 at ¶ 12, 15.) From April 20, 2001 to July 2, 2001, while incarcerated at the MPCJF, Plaintiff was taking Paxil, an anti-depressant, prescribed to him by a CMS psychiatrist. ( Id. at ¶ 18.) On July 3, 2001, Plaintiff was released from the MPCJF to Level 3 probation. ( Id. at ¶ 20 .) Plaintiff was not given any medication to take with him upon his release. ( Id. at ¶ 21.)

Plaintiff began drinking again after his release, and on July 10, 2001, he was arrested by the Wilmington Police for driving under the influence, and was later charged with violation of his probation. ( Id. at ¶ 24, 25.) Due to these charges, Plaintiff was again

incarcerated at the MPCJF. ( *Id.*) Upon readmission, Plaintiff experienced severe alcohol withdrawal symptoms. ( *Id.* at ¶ 36.)

On July 18, 2001, Plaintiff attempted to escape from custody after an appearance at a courthouse in Wilmington. ( *Id.* at ¶ 39.) After this incident, defendant Lee issued an order placing Plaintiff on administrative segregation at the MPCJF. ( *Id.* at ¶ 46.) Plaintiff also met with Dr. Joshi, a CMS psychiatrist, who prescribed him the medications Paxil and Trazadone, for insomnia. ( *Id.* at ¶ 48.) After three days in the infirmary, Plaintiff was transferred back into the general prison population. ( *Id.* at ¶ 49.) On July 23, 2001, Plaintiff was transferred to an isolation "pod," or cell, where he remained for 16 days. ( *Id.* at ¶¶ 53, 68.)

During this time, Plaintiff spent one night in a cell with an inmate he characterized as "angry and volatile," and he was afraid to sleep that night. ( *Id.* at ¶¶ 56-60.) On August 4, 2001, Plaintiff did not receive his medication because the entire isolation wing of the MPCJF was placed in lockdown for security reasons. ( *Id.* at ¶¶ 63-67.) As a result, Plaintiff experienced some tremors in his extremities. ( *Id.*) Plaintiff returned to the general prison population on August 8, 2001. ( *Id.* at ¶ 73.) He did not receive his medication on August 8 and 9, 2001. ( *Id.* at ¶ 76.)

**\*2** Plaintiff requests a declaratory judgment that all defendants have violated, and continue to violate, his rights under the Eighth and Fourteenth Amendments by failing to provide adequate medical care and for transferring him to administrative segregation without a hearing. Plaintiff also requests compensatory and punitive damages, to be assessed jointly and severally against all defendants.

III. STANDARD OF REVIEW
In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the factual allegations in the complaint must be accepted as true. *Cruz v. Beto,* 405 U.S. 319, 322 (1972) ( *per curiam* ). This is especially true where, as here, the complaint is filed *pro se. Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citations omitted). A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). However, broad, unsupported allegations do not preclude dismissal and do not constitute a cause of action. *Signore v. City of McKeesport,* 680 F.Supp. 200, 203 (W.D.Pa.1988), *aff'd,* 877 F.2d 54 (3d Cir.1989).

IV. DISCUSSION

1. State Defendants' Motion to Dismiss
Plaintiff argues that Lee purposefully interfered with his medical treatment when he ordered Plaintiff to administrative segregation, and that Lee also violated Plaintiff's right to due process because the transfer occurred without a hearing. Plaintiff further argues that Williams and Taylor are responsible for Lee's conduct and therefore liable under the doctrine of *respondeat superior.* State Defendants argue that Plaintiff's complaint does not set forth sufficient facts to sustain his claim that they acted with deliberate indifference to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment or to sustain his claim that his due process rights under the Fourteenth Amendment have been violated.[FN2] (D.I. 13 at 4.)

FN2. Plaintiff states that, from June 19, 2001 to July 3, 2001, and from July 10, 2001 to the time he filed his complaint on September 28, 2001, he was a pre-trial detainee. (D.I.

2 ¶ 3.) However, medical issues for pre-trial detainees are controlled by the same "deliberate indifference" standard that applies to sentenced inmates. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Boring v. Kozakiewicz,* 833 F.2d 468, 472 (3d lcr.1987), *cert. denied,* 485 U.S. 991 (1988).

In order to state a claim based on lack of adequate medical care, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To show "deliberate indifference," a plaintiff must **demonstrate a sufficiently culpable state** of **mind** on the part of the defendant. *See, e.g., Farmer v. Brennan,* 511 U.S. 825, 828 (1994). The plaintiff must also show personal involvement by the defendant. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *see also Monell v. Dep't of Social Services,* 436 U.S. 658, 694 (1979) ( *respondeat superior* may not be used in a § 1983 claim).

The basis of Plaintiff's Eighth Amendment claim against Lee is that, as a result of Plaintiff's transfer to administrative segregation, Plaintiff did not receive his medication on August 4, 2001. This is not an act or omission that is sufficiently harmful to prove deliberate indifference to Plaintiff's medical needs. Plaintiff has not alleged any facts to prove that Lee purposefully withheld Plaintiff's medication; rather, Plaintiff's complaint reflects that the entire isolation ward was locked down for security reasons on August 4, 2001, which is why Plaintiff did not receive his medication on that day. These facts cannot support a viable cause of action under the Eighth Amendment for inadequate medical care, and Plaintiff's claims against Lee under the Eighth Amendment will be dismissed.

***3** Plaintiff claims that his Fourteenth Amendment right to due process was violated when Lee transferred him to administrative segregation without a hearing. In order to prove a violation of the Due Process Clause, Plaintiff must show that (1) a constitutionally protected liberty or property interest is at issue and (2) if so, that the state did not give him notice or an opportunity to be heard prior to depriving him of that protected interest. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). Under the Due Process Clause, a prisoner does not have a liberty interest in remaining in the general prison population,[FN3] *see McKune v. Lile,* 536 U.S. 24, 33 (2002) (citation omitted), and, in this case, Lee's decision to transfer Plaintiff to administrative segregation was reasonably related to the goal of maintaining institutional security, given Plaintiff's escape attempt on July 18, 2001, *see Turner v. Safley,* 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). Because Plaintiff does not have a constitutionally protected liberty interest at issue, his claims against Lee under the Fourteenth Amendment will be dismissed.

FN3. Nor does Delaware state law create a liberty interest in a prisoner remaining in the general prison population. *Brown v. Cunningham,* 730 F.Supp. 612, 614 (D.Del.1990) (discussing statutory provision 11 Del. C. § 6535 regarding placement of Delaware prisoners in segregation).

As to Taylor and Williams, the law is clear that the doctrine of *respondeat superior* is inapplicable to claims brought under 42 U .S.C. § 1983. *Monell,* 436 U.S. at 694. Plaintiff has not alleged any affirmative conduct on the part of Taylor and Williams that would subject them to liability, and therefore all of Plaintiff's claims against them will be dismissed. *Id.; see also Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).

2. CMS's Motion to Dismiss
Plaintiff argues that CMS failed to supply adequate personnel and professional staff and services to efficiently meet his medical needs and to respond to his requests for

medication between July 10, 2001 and July 18, 2001. Plaintiff also claims that CMS breached its duty of care by failing to provide medical care for him when he was released from the MPCJF on July 3, 2001. Finally, plaintiff argues that CMS is liable for the actions of its employees under the doctrine of *respondeat superior.*

As to CMS, private corporations that provide medical services at prisons cannot simply be held liable under a theory of *respondeat superior* without a showing of any personal involvement. *Rode,* 845 F.2d at 1207, *Swan v. Daniels,* 923 F.Supp. 626, 633 (D.Del.1995). Personal involvement is shown through allegations of personal direction or of actual knowledge and acquiescence of an employee's actions by someone of authority within a corporation. *Id.* Clyne has failed to allege any personal involvement by CMS, in the form of personal direction or of actual knowledge and acquiescence, concerning his alleged inadequate medical treatment. Finding no connection between CMS and Clyne's complaint, CMS's Motion to Dismiss will be granted.

As all of Plaintiff's federal claims against State Defendants and CMS have been dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's state law claims. See *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir.1995).


V. CONCLUSION
*4 For the reasons set forth, the State Defendants' Motion to Dismiss (D.I.13) will be granted and CMS's Motion to Dismiss will be granted (D.I.26). An appropriate order will issue.


ORDER

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that the Motion to Dismiss filed by defendants Bradley A. Lee, Raphael Williams, and Stanley Taylor (D.I.13) is GRANTED and the Motion to Dismiss filed by defendant Correctional Medical Services (D.I.26) is GRANTED.

D.Del.,2004.
Clyne v. Correctional Medical Services
Not Reported in F.Supp.2d, 2004 WL 502215 (D.Del.)

<u>**CERTIFICATE OF SERVICE**</u>

      I, James Drnec, hereby certify that on the 1st day of April 2008, the foregoing Defendant

Correctional Medical Services, Inc.'s Motion for Summary Judgment was filed via CM/ECF and

served upon the following via First Class Mail:

                      Adam Hackett
                      SBI# 00329697
                      Delaware Correctional Center
                      1181 Paddock Rd.
                      Smyrna, DE 19977

                                /s/ James E. Drnec
                          James E. Drnec, Esquire (#3789)