IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ADAM HACKETT,                       :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civ. Action No. 06-426-JJF
                                    :
CORRECTIONAL MEDICAL SERVICES,:
                                    :
          Defendant.                :

Adam Hackett, Pro se Plaintiff, James T. Vaughn Correctional
Center, Smyrna, Delaware.

James Edward Drnec, Esquire, Balick & Balick, LLC.  Attorney for
Defendant Correctional Medical Services.

**MEMORANDUM OPINION**

October 21, 2008
Wilmington, Delaware

Joseph J. Farnan Jr.
Farnan, District Judge

Presently before the Court is Defendant's Motion For Summary Judgment and Plaintiff's Motion To Strike. (D.I. 53, 56.) For the reasons discussed below, the Court will grant Defendant's Motion For Summary Judgment and will deny Plaintiff's Motion To Strike.

## I. BACKGROUND

Plaintiff Adam Hackett ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center, Smyrna, Delaware, formerly named the Delaware Correctional Center, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging Defendant Correctional Medical Services ("Defendant") deliberately delayed or denied medical treatment in violation of the Eighth Amendment.[1] He also raises a supplemental state medical negligence claim. More particularly, Plaintiff alleges he was told he would see a specialist for a medical problem, but waited over a year before seeing the specialist

Defendants move for summary judgment on the grounds that Plaintiff has offered no expert testimony in support of his state medical negligence claim, he fails to state a claim for deliberate indifference, and the facts do not support a finding of deliberate indifference. Plaintiff did not respond to the

---

[1]Defendants former Warden Thomas Carroll and former Commissioner Stanley Taylor were dismissed by the Court on October 3, 2006. (D.I. 9.)

Case 1:06-cv-00426-JJF Document 61 Filed 10/21/08 Page 3 of 11 PageID #: 257

Motion for Summary Judgment. Instead, he filed a Motion To
Strike the Motion For Summary Judgment on the grounds that he did
not receive a copy of a deposition transcript, and he has been
"ambushed" by the appearance of a new attorney.

## II. STANDARD OF LAW

The Court shall grant summary judgment only if "the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c). The moving party bears the burden of
proving that no genuine issue of material fact exists. See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 n.10 (1986). The Court will not grant the entry of summary
judgment without considering the merits of Defendants' unopposed
motion. Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir.
1991) (holding that a district court should not have granted
summary judgment solely on the basis that a motion for summary
judgment was not opposed.").

When determining whether a genuine issue of material fact
exists, the Court must view the evidence in the light most
favorable to the nonmoving party and draw all reasonable
inferences in that party's favor. Wishkin v. Potter, 476 F.3d
180, 184 (3d Cir. 2007). "Facts that could alter the outcome are

-2-

'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

### A. Motion To Strike

Plaintiff moves to strike Defendant's Motion For Summary Judgment pursuant to Fed. R. Civ. P. 12(f) on the grounds that he did not receive discovery, he was "ambushed" by the appearance of new counsel, and the motion manipulates and misstates his burden of proof, and misstates the facts. Rule 12(f) provides that "[u]pon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any

-3-

pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Substitution of counsel is an insufficient reason to strike a pleading. Defendant advises the Court that Plaintiff was ultimately provided with his medical records and that there are no deposition transcripts for physicians. After reviewing Defendant's Motion For Summary Judgment, the Court finds no basis to strike it under Rule 12(f). Therefore, the Court will deny Plaintiff's Motion To Strike.

## B. Medical Needs

Plaintiff alleges that he did not get the necessary medical attention for an unusual bump that appeared on his head and that he waited almost a full year before seeing a specialist for the condition. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S.

825, 837 (1994). A prison official may manifest deliberate
indifference by "intentionally denying or delaying access to
medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of
medical treatment," so long as the treatment provided is
reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir.
2000). An inmate's claims against members of a prison medical
department are not viable under § 1983 where the inmate receives
continuing care, but believes that more should be done by way of
diagnosis and treatment and maintains that options available to
medical personnel were not pursued on the inmate's behalf.
Estelle v. Gamble, 429 U.S. 97, 107 (1976). Moreover,
allegations of medical malpractice are not sufficient to
establish a Constitutional violation. White v. Napoleon, 897
F.2d 103, 108-09 (3d Cir. 1990) (citations omitted); see also
Daniels v. Williams, 474 U.S. 327, 332-34 (1986) (negligence is
not compensable as a Constitutional deprivation). Finally, "mere
disagreement as to the proper medical treatment" is insufficient
to state a constitutional violation. See Spruill v. Gillis, 372
F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies on the theory of respondeat superior
to hold a corporation liable, he must allege a policy or custom
that demonstrates such deliberate indifference. Sample v.
Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989); Miller v.

<u>Correctional Med. Sys., Inc.</u>, 802 F. Supp. 1126, 1132 (D. Del.
1992). In order to establish that Defendant is directly liable
for the alleged constitutional violations, plaintiff "must
provide evidence that there was a relevant [Correctional Medical
Service] policy or custom, and that the policy caused the
constitutional violation[s] [plaintiff] allege[s]." <u>Natale v.
Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003)
(because respondeat superior or vicarious liability cannot be a
basis for liability under 42 U.S.C. § 1983, a corporation under
contract with the state cannot be held liable for the acts of its
employees and agents under those theories). Assuming the acts of
Defendant's employee have violated a person's constitutional
rights, those acts may be deemed the result of a policy or custom
of the entity for whom the employee works, thereby rendering the
entity liable under § 1983, where the inadequacy of existing
practice is so likely to result in the violation of
constitutional rights that the policymaker can reasonably be said
to have been deliberately indifferent to the need. <u>See</u> <u>Natale</u>,
318 F.3d at 584 (citations omitted). "'Policy is made when a
decisionmaker possess[ing] final authority to establish . . .
policy with respect to the action issues an official
proclamation, policy or edict.'" <u>Miller v. Corr. Med. Sys.,
Inc.</u>, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in
original) (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d

1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be
proven by showing that a given course of conduct, although not
specifically endorsed or authorized by law, is so well-settled
and permanent as virtually to constitute law."  Id. (citing
Andrews, 895 F.2d at 1480; Fletcher v. O'Donnell, 867 F.2d 791,
793-94 (3d Cir. 1989)).

     The record reflects that Plaintiff submitted a sick call
request on November 2, 2005, complaining that his head had been
hurting.  (D.I. 54.)² He was seen by medical personnel on
November 20, 2005.  Medical notes state that Plaintiff had a lump
on the right side of his head "that comes [and] goes."  The area
was painful.  The plan was to refer Plaintiff to a "mid level
provider."  On December 5, 2005, Plaintiff was again seen by
medical personnel.  At that time, he indicated that the bump had
been present for at least two years.  The presumed diagnosis was
sebaceous cyst at the right hairline, 1 cm x 1 ½ cm.  A
consultation request was submitted for Plaintiff to see a general
surgeon.  More information was sought after the request.

     On January 1, 2006, Plaintiff submitted another sick call
request complaining of chest pains and that the knot on his head
was causing extreme headaches.  Plaintiff was taking Motrin for
pain, and medical was awaiting a general surgery consult.  The

_____

²Plaintiff's medical records were submitted under seal at
D.I. 54.

-7-

referral was deferred on the basis that the condition was "non-urgent." Id.

On May 7, 2006, Plaintiff submitted a sick call request complaining that the knot on his head was causing headaches and tiredness and that he had injured his left arm. There was a follow-up visit on June 5, 2006, and Plaintiff complained that his head hurt and that he sometimes had headaches. The cyst has increased in size since November 2005 and measured at 2 ½ x 1 cm. It was movable, tender to the touch, and had a black spot at its center. Medical personnel gave Plaintiff Motrin for pain and made a second consultation request for referral to a general surgeon. The request was approved on June 8, 2006 and Plaintiff was seen by an outside physician on June 29, 2006, who diagnosed a subcutaneous mass of the right forehead. It was surgically removed on July 26, 2006. The afternoon after the surgery Plaintiff was seen by Defendant's medical providers with a follow-up visit two days later. Plaintiff was next seen by Defendant's medical personal on July 30 and July 31, 2006. He received follow-up care from the outside physician on August 8, 2006, and his sutures were removed. Plaintiff saw Defendant's medical providers for follow-up on August 22, 2006. At the time Plaintiff had no complaints, and his head wound had healed well. The record reflects two sick call requests subsequent to Plaintiff's surgery; one on June 16, 2007, complaining of a

-8-

headache and the other on July 6, 2007 complaining of a headache and a swollen mouth.

The record reflects that Plaintiff's medical condition was monitored and that he received medical care and treatment on a regular basis.  While Plaintiff may believe that he should have seen an outside specialist sooner, the record reflects that Defendant reviewed Plaintiff's condition and did not consider it an emergency.  Additionally, when it became apparent that the mass had increased in size, Plaintiff was scheduled to see an outside provider and he was scheduled for surgery soon after. Even construing the facts in the light most favorable to Plaintiff, he has failed to make a showing of deliberate indifference to a serious medical need.  Accordingly, the Court will grant Defendant's motion for summary judgment as to the constitutional issue.

## C.  Medical Negligence

Defendant moves for summary judgment on Plaintiff's state claim for medical negligence.[3]  In Delaware, medical malpractice is governed by the Delaware Health Care Negligence Insurance and Litigation Act.  18 Del. C. § 6801(7).  When a party alleges medical negligence, Delaware law requires the party to produce

_____

[3]Defendant erroneously states that the Court did not rule on its Motion To Dismiss filed on March 26, 2007.  (D.I. 16.)  The internal Court docket indicates that the motion was withdrawn by defense counsel during a April 27, 2007 teleconference.

-9-

expert medical testimony detailing: (1) the applicable standard of care, (2) the alleged deviation from that standard, and (3) the causal link between the deviation and the alleged injury." Bonesmo v. Nemours Found., 253 F. Supp. 2d 801, 804 (D. Del. 2003) (quoting Green v. Weiner, 766 A.2d 492, 494-95 (Del. 2001)) (internal quotations omitted); 18 Del. C. § 6853.

Plaintiff did not submit expert testimony to support a medical negligence claim. Accordingly, the Court will grant Defendant's Motion For Summary Judgment on Plaintiff's medical negligence claim under Delaware law.

## IV.   CONCLUSION

The Court will grant Defendants' Motion For Summary Judgment. (D.I. 53.) The Court will deny Plaintiff's Motion To Strike. (D.I. 56.) An appropriate Order will be entered.

-10-